## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

TORI A. HILLMAN,          )
                            )
             Plaintiff,   )
                            )   No. 2:20-cv-03225-DCN-MGB
         vs.           )
                            )   **ORDER**
LLOYD J. AUSTIN, III,[1] *Secretary of*  )
*Department of Defense*,        )
                            )
            Defendant.   )
_____)

This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 77, that the court grant defendant Lloyd J. Austin, III's (the "Secretary") motion for summary judgment, ECF No. 69. For the reasons set forth below, the court adopts the R&R and grants the motion.

## I.  BACKGROUND

This matter arises out of alleged race-based discrimination, retaliation, and creation of a hostile work environment. On September 26, 2011, plaintiff Tori A. Hillman ("Hillman") began working for the Defense Commissary Agency ("DeCA") at the Naval Weapons Station in Charleston, South Carolina. Hillman was a store worker at the Naval Weapons Stations until she resigned on July 13, 2018. During the relevant period, Hillman primarily reported to two individuals: Sandra Flynn ("Flynn"), a grocery manager and Hillman's first-level supervisor, and Earlene Mills ("Mills"), an assistant store manager and her second-level supervisor. ECF No. 72-5, Hillman Decl. at 3.

_____

[1] Lloyd J. Austin, III is now the Secretary of Defense. Pursuant to Federal Rule of Civil Procedure 25(d), Austin is automatically substituted for former Secretary Mark T. Esper as the defendant in this lawsuit.

Hillman—who is a white female—claims that during her employment, Mills—who is black—discriminated and retaliated against Hillman and created a hostile work environment by, inter alia, "giving preferential treatment to [Hillman's] black co-workers" and retaliating against her after she complained of the treatment.  ECF No. 72 at 1–2.

Namely, on September 17, 2014, Hillman allegedly suffered a work injury and sought Leave Without Pay ("LWOP") with worker's compensation.  According to Hillman, Mills made the decision to count Hillman's time off as sick leave rather than LWOP subject to workman's compensation.  Hillman considered Mills's decision to be "unfair treatment" based on her belief that her black co-workers were not charged with sick leave when they arrived to work late.  Hillman Decl. at 5.  Additionally, Hillman believed that many of her black co-workers received preferential treatment because they "were invited for 2-3 hour lunches with management" that Hillman was not invited to, id. and that those co-workers were never charged sick leave for the lunches, ECF No. 69-1, Hillman Dep. at 62:3–16.  On October 15, 2014, Hillman approached Mills to discuss the decision to charge Hillman with sick leave.  During the meeting, Mills allegedly assaulted Hillman and left scratches and bruises on her neck and left shoulder.  Hillman told Mills following the incident, "I am going to file an EEO complaint."  ECF No. 72 at 20.

On the same day as the incident, October 15, 2014, Hillman filed a workplace complaint with the store director at the time, Bruno Ortiz ("Ortiz").  Hillman claims that she did not hear back about her complaint, and after about a week, Hillman filed an incident report with the Joint Base Charleston police.  On February 12, 2015, Hillman

2

filed a complaint ("EEO complaint") with the Equal Employment Opportunity Commission ("EEOC"). Hillman alleges that Mills retaliated against her for engaging in those protected activities by subsequently ordering Flynn not to schedule Hillman for more than forty-eight hours in a pay period and to deny her computer-assisted ordering ("CAO") training. Hillman had sought CAO training since 2013 as it was needed for her to qualify for a "[forty]-hour permanent GS-5 CAO position." ECF No. 72-20, Hillman Decl. at 3. In late 2016, Hillman was assigned to work as an identification card checker at the ID desk in front of Mills's office. These actions allegedly resulted in decreased pay and lost job opportunities. Hillman further alleges that Mills and other managers engaged in other acts of workplace harassment on the basis of her race throughout the duration of her employment. On July 13, 2018, Hillman submitted her letter of resignation, wherein she wrote that the "working environment ha[d] become so hostile, intimidating[,] and intolerable that [she] ha[d] no choice but to resign." ECF No. 72-20 at 18.

On September 9, 2020, Hillman, proceeding pro se, filed the instant action against the Secretary. ECF No. 1. On February 18, 2021, Hillman filed an amended complaint. ECF No. 22. The amended complaint, now the operative complaint, alleges discrimination, retaliation, hostile work environment, and constructive discharge, and "request[s] all relief available . . . under Title VII" of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Id. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rules 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to Magistrate Judge Baker.

On January 31, 2022, the Secretary filed a motion for summary judgment. ECF No. 69. Hillman responded to the motion on March 7, 2022, ECF No. 72, and the Secretary replied on April 1, 2022, ECF No. 76. On July 22, 2022, Magistrate Judge Baker issued the R&R, recommending that the court grant the motion for summary judgment. ECF No. 77, R&R. On August 8, 2022, Hillman filed her objections to the R&R. ECF No. 79. The Secretary responded to Hillman's objections on August 22, 2022. ECF No. 80. Hillman did not file a reply, and the time to do so has now elapsed. As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's

4

findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

Plaintiff is proceeding <u>pro se</u> in this case. <u>Pro se</u> complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. <u>See</u> <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978), <u>cert.</u> <u>denied</u>, 439 U.S. 970, 99 (1978). A federal district court is charged with liberally construing a complaint or petition filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case. <u>See</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. <u>See</u> <u>Weller v. Dep't of Soc.</u> <u>Servs.</u>, 901 F.2d 387, 390–91 (4th Cir. 1990).

### III.   DISCUSSION

The Secretary moves for summary judgment in his favor on all of Hillman's claims, which the Magistrate Judge construed as claims for Title VII discrimination, retaliation, hostile work environment, and constructive discharge. The Magistrate Judge recommended that the court grant the Secretary's motion, finding that under each claim, Hillman failed to raise a genuine dispute of material fact as to one element or more of each respective claim. Although Hillman purports to have three broad objections to the R&R, she ultimately provides specific objections under each claim that the Magistrate Judge analyzed. The court thus proceeds to analyze each of the claims in turn, noting that for the conclusions by the Magistrate Judge where Hillman has objected to specific errors in the judge's conclusions, the court reviews <u>de novo</u>. Any conclusions where Hillman has generally objected or failed to object, the court reviews for clear error.

Before turning to the claims, however, the court addresses a preliminary objection raised by Hillman. In her objections, Hillman argues, as she did in her response to the

motion for summary judgment, that the Secretary failed to preserve evidence in this case. Specifically, Hillman argues that the litigation hold that was issued on November 30, 2020 was issued far too late in the proceedings, resulting in spoliation of evidence that would have been beneficial to Hillman. As a result, Hillman requested that the court draw adverse inferences on facts that Hillman allegedly was unable to discover. The Magistrate Judge acknowledged Hillman's argument and agreed to the request, noting that in formulating the recommendation, the Magistrate Judge would draw the "requested adverse inferences when considering the instant [m]otion." R&R at 4 n.3. For some reason, however, Hillman states in her objections that the Magistrate Judge "erred on this issue." ECF No. 79 at 3. The court can only assume that Hillman objects due to a misunderstanding of the R&R. As the court views it, the Magistrate Judge resolved to draw inferences on unknown facts in a way that was adverse to the Secretary and favorable to Hillman. To eliminate any remaining doubt, the court agrees to infer the existence of facts as stated by Hillman in her response[2] and proceeds to analyze each Title VII claim in turn.

### A. Title VII Discrimination

In her amended complaint, Hillman alleges that her supervisor, Mills, discriminated against her on the basis of her race. Specifically, Hillman alleges "racial discrimination against [her] and other white employees regarding leave policies" and "favoritism [shown] to black employees." Amend. Compl. ¶¶ 13–14.

---

[2] These facts are that (1) Hillman was denied CAO training and a subsequent promotion to the GS-5 CAO position based on her supervisors' failure to complete her personnel file that contained her request for CAO training, and (2) Hillman was assigned to work at the ID desk from November 1, 2016 to June 7, 2017. ECF No. 72 at 2.

Title VII prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment on the basis of that individual's race.  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may avoid summary judgment on a racial discrimination claim through two avenues of proof: (1) by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether race motivated the employer's adverse employment decision, or (2) by relying on the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Tabor v. Freightliner of Cleveland, LLC, 388 F. App'x, 321, 322 (4th Cir. 2010) (citing Diamond, 416 F.3d at 318).

As the R&R noted, the applicable standard of proof here is complicated by Hillman's allegations of reverse discrimination.  Under the law, Hillman's race discrimination claims "involve[] 'reverse discrimination'" because Hillman is "a member of the white majority . . . alleging racial discrimination."  Lucas v. Dole, 835 F.2d 532, 533–34 (4th Cir. 1987).  As the R&R explained, the circuit courts are split on whether a heightened standard applies to reverse discrimination claims.  Id. (citing Presley v. Beaufort Cnty. Sch. Dist., 2021 WL 791206, at *4 (D.S.C. Mar. 2, 2021)).  The Fourth Circuit has not directly weighed in on the issue, and district courts within the circuit have adopted competing positions.  See id. (collecting cases).  The Magistrate Judge ultimately resolved not to apply a heightened standard, reasoning that Hillman's claims fail even under the traditional standards of proving Title VII discrimination.  The court reaches a similar conclusion regarding Hillman's claims.  As such, the court declines to apply a heightened standard but does not weigh in on whether such a standard should ordinarily apply to reverse discrimination claims.

8

The R&R found that Hillman failed to establish her discrimination claim through direct or circumstantial evidence of discrimination, also known as the mixed-motive framework.  In her objections, Hillman concedes that she "did not provide direct evidence" under the mixed-motive framework.  ECF No. 79 at 4.  Rather, Hillman argues that contrary to the R&R's finding, she established a prima facie case of discrimination under the McDonnell Douglas burden-shifting framework.  In the absence of any objections to the R&R's findings on the mixed-motive framework, the court focuses on Hillman's arguments under the McDonnell Douglas burden-shifting framework, ultimately finding that Hillman has failed to establish a prima facie case.

Under the McDonnell Douglas burden-shifting framework, Hillman must first establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802; Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (citing Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 252–53 (1981)).  To establish a prima facie case of racial discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected class, (2) her job performance was satisfactory, (3) she suffered an adverse employment action, and (4) similarly situated employees outside her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination.  Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its conduct.  Id.  Finally, if the defendant meets this burden, the plaintiff must then prove that the defendant's proffered reasons "were not its true reasons, but were a pretext for discrimination."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  "At this point, the

burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." Burdine, 450 U.S. at 256.

In his motion for summary judgment, the Secretary did not dispute that Hillman meets the first two elements of a prima facie case of discrimination. The R&R found that Hillman failed to prove a prima facie case of race discrimination because (1) she failed to show that she suffered an adverse employment action; and (2) she failed to show that similarly-situated employees outside of Hillman's protected class were treated more favorably.

### 1. Adverse Employment Action

In Hillman's response to the motion for summary judgment, Hillman argued that DeCA took adverse employment actions against her in four main ways: (1) by allowing black employees to take extended lunch breaks without charging them leave or imposing disciplinary action, (2) by removing Hillman from the work schedule on the day of a VIP visit, (3) by promoting black employees over white employees, and (4) by denying training opportunities, such as CAO training, to white employees. The Magistrate Judge found that each alleged action could not be considered an adverse employment action. Hillman maintains in her objections that the first two actions constitute adverse employment actions. See ECF No. 79 at 4–5.

Upon review, the court finds that the actions alleged by Hillman are not adverse employment actions as a matter of law. In the discrimination context, "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d

208, 219 (4th Cir. 2007) (internal quotation marks omitted).  Hillman argues in her objections that the R&R ignored that the purported acts did, in fact, result in a "denial of benefits" that "altere[d] the conditions" of her employment.  ECF No. 79 at 4 (alteration in original and citation omitted).  For example, Hillman argues that the extended lunch breaks offered to black employees "paid some black employees for not working."  Id.  But the Magistrate Judge specifically addressed that argument, noting that Hillman failed to show how that alleged action directly affected her, as required under the law.  Courts consistently hold that "where an employee is not discharged, [adverse] actions typically take the form of a decrease in compensation, demotion, or loss of an opportunity for promotion."  Kiraly v. Bd. of Educ. of Prince George's Cnty., 2012 WL 3136501, at *3 (D. Md. July 30, 2012) (citing James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)).  Here, Hillman fails to explain how her co-workers' ability to be paid for not working—even if true—is commensurate with a decrease in compensation, demotion, or loss of an opportunity.

The Magistrate Judge found that Hillman's failure to be scheduled on the day of the VIP visit similarly did not constitute an adverse employment action.  The Magistrate Judge explained that this decision amounted to a one-time loss in pay because Hillman did not otherwise argue that she lost promotional opportunities as a result of not being able to meet the senior officials attending the VIP visit.  To the extent Hillman argues that she was deprived of the opportunity to meet with the VIPs, the record contains no evidence that she would have had an opportunity to do so during the visit anyways.  Accordingly, the Magistrate Judge reasoned that the action did not rise to the level of having a "significant detrimental effect" on Hillman.  See Laird v. Fairfax Cnty., 978

11

F.3d 887, 893 (4th Cir. 2020) (explaining that an adverse action must result in "some significant detrimental effect").

In her objections, Hillman disagrees that her lost wages from not working on that day were insignificant. This objection, however, states nothing more than "disagreement with [the] magistrate's suggested resolution" of the motion for summary judgment, and it does not specifically identify any factual or legal error in the R&R. See Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). A party's objections to an R&R that simply restate the party's argument before the magistrate judge and argues for a different outcome are not "cognizable and specific" objections. Weber v. Aiken-Partain, 2012 WL 489148, at *2 (D.S.C. Feb. 15, 2012). As such, the court "must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (internal quotations and citation omitted). The court finds no clear error and adopts the R&R's conclusion that Hillman failed to make a prima facie showing of an adverse employment action. This alone dooms Hillman's discrimination claim under the third element of the McDonnell Douglas burden-shifting framework.

### 2. More Favorable Treatment for Similarly-Situated Employees

Even if Hillman made a sufficient showing of an adverse employment action, to establish the fourth element of her prima facie case, Hillman must also show that there were similarly-situated employees outside of her protected class that were treated more favorably. The R&R found that Hillman's prima facie case of discrimination alternatively failed on this ground. Specifically, the R&R determined that Hillman had

failed to show that her four black coworkers who were allegedly promoted or provided with CAO training were similar to her in all relevant respects.

The legal standard involved here is clear: "to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019) (citing Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010)) (alterations in original).  In her objections, Hillman claims that she and her comparators were all "essentially grocery store workers and under the ultimate supervision of Ms. Mills."  ECF No. 79-5 (citing ECF No. 69-1, Hillman Dep. at 8:18–22).  But the deposition excerpt Hillman cites does not actually state that she and her comparators were all supervised by Mills.  Even if that were the case, Hillman has still failed to offer any evidence, beyond her own averments, that the other grocery workers were subject to the same standards or engaged in the same activities.  In the absence of such evidence, the court overrules Hillman's objections and finds that Hillman has failed to create a genuine issue of material fact as to whether similarly-situated black employees were provided more favorable treatment.

In sum, the court agrees with the Magistrate Judge that Hillman cannot succeed on her discrimination claim by showing a prima facie case of discrimination under the McDonnell Douglas burden-shifting framework.  The court therefore adopts the R&R's recommendation and grants summary judgment on the Title VII discrimination claim in the Secretary's favor.

### B.  Title VII Retaliation

In her amended complaint, Hillman alleges retaliation under Title VII based on Mills's actions after Hillman informed Mills of her intent to file an EEO complaint, after Hillman filed complaints with her higher-level supervisors, and after Hillman filed her EEO complaints.

Title VII forbids an employer from taking action that discriminates against an employee because that employee either has "opposed any practice made an unlawful employment practice" by Title VII or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).  The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006).  Like under a discrimination claim, employees may prove that their employer retaliated against them for engaging in a protected activity either through direct evidence of retaliatory animus or under the McDonnell Douglas burden-shifting framework.  Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).

In her response to the Secretary's motion for summary judgment, Hillman argued that she produced direct evidence of retaliation and met her burden under the McDonnell Douglas framework.  The Magistrate Judge determined that Hillman had failed to show a genuine issue of material fact as to both sources of proof.  As before, Hillman only "object[s] to [the Magistrate Judge's] finding that [she] did not satisfy the elements of the

McDonnell Douglas burden-shifting framework," and the court addresses her contentions below.  ECF No. 79 at 5.

To prevail under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of retaliation.  Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021).  After a prima facie case is made, the burden shifts to the employer to show that it took adverse action for a legitimate, non-retaliatory reason.  Id. If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were merely pretext for retaliation.  Id.; Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148 (2000).

The elements of a prima facie Title VII retaliation case are (1) engagement in a protected activity; (2) adverse action against the plaintiff; and (3) a causal link between the protected activity and the adverse action.  Coleman, 626 F.3d at 190.  In the retaliation context, an adverse action is one that "well might have dissuaded a reasonable worker" from engaging in protected conduct.  Burlington N., 548 U.S. at 68 (internal quotation marks and citation omitted); see Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) ("[A]lthough an adverse action need not affect the terms and conditions of employment, there must be some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.") (internal quotation marks and citation omitted).

The Secretary did not dispute that Hillman engaged in protected activities.[3]  In her amended complaint, Hillman alleges that Mills engaged in multiple acts of retaliation. The Magistrate Judge evaluated each act in the R&R, ultimately concluding that none supported a claim for retaliation.  Now, in her objections, Hillman focuses on four actions: (1) the decision to deny CAO training for Hillman, (2) the removal of Hillman from the work schedule on the day of the VIP visit, (3) the decision to schedule Hillman for less hours, and (4) the decision to reassign her to work at the ID desk.  The court adopts the Magistrate Judge's recommendations as to these acts, finding they are either not adverse actions or that the acts are not causally connected to Hillman's protected activity.

### 1.  Adverse Action

Among those acts at issue, the Magistrate Judge determined that the removal of Hillman from the work schedule on the day of the VIP visit did not constitute an adverse action.  While the meaning of "'adverse action' differs slightly depending on whether the claim is for unlawful discrimination or retaliation," both contexts require showing that the acts resulted in a "significant detriment."  Laird, 978 F.3d at 893.  As before, the Magistrate found that the single instance of lost wages that resulted from being left off the work schedule did not constitute a significant detriment.  Hillman repeats her same objection as before, and the court overrules the objection for the same reasons stated

---

[3] To be sure, the Secretary only acknowledged that Hillman engaged in a protected activity when she filed EEO complaints in 2015, 2018, and 2019.  ECF No. 69 at 15.  However, the court agrees with the Magistrate Judge that both Hillman's expression of her intent to file an EEO complaint and her complaints through internal company procedures in October 2014 fit within the meaning of oppositional conduct under Title VII.  See R&R at 19–20.

before.  On the other hand, the Magistrate Judge found that a reasonable jury could conclude that the decisions to deny CAO training, schedule fewer work hours, and reassign Hillman to the ID desk were materially adverse.

### 2.  Causal Connection

Nevertheless, the Magistrate Judge recommended finding that Hillman had failed to establish a causal connection between those allegedly adverse acts and her protected activities.  Specifically, the Magistrate Judge concluded that there was no evidence in the record that the decisionmaker responsible for each of those acts, Mills, was the one who retaliated against her because of her protected activity.

First, for Hillman's claim that Mills denied her CAO training, the Magistrate Judge found that the record indicated that Ortiz, the store director, was solely responsible for assigning Hillman to CAO training.  In her objections, Hillman first cites Ortiz's declaration to argue that Mills had the authority to deny her CAO training.  ECF No. 79 at 6.  The court has reviewed Ortiz's declaration and finds that it does not support Hillman's position.  In his declaration, Ortiz states that he scheduled Hillman for CAO training on October 18, 2014, but the employee from the Air Force Base who was scheduled to perform the training became ill and could not attend.  ECF No. 69-5, Ortiz Decl. at 7.  Shortly thereafter, Ortiz was transferred to Fort Hamilton, and at that point, "it was out of [his] control" whether "to further the training for Ms. Hillman."  Id.  While Ortiz acknowledged speaking to Mills about the cancelled training, Ortiz never stated that Mills was responsible for scheduling CAO training at any time.  Indeed, when asked to respond to Hillman's claim that Mills did not want Hillman to receive CAO training at the Air Force Base, Ortiz responded: "This is not true."  Id.

However, Flynn's testimony, which Hillman also cites, arguably presents a genuine issue of material fact as to whether Mills had the authority to deny CAO training. In her declaration, Flynn stated that after the Air Force Base training was cancelled, additional CAO training later became available. Flynn further stated that she was "unable to sign Ms. Hillman up due to Ms. Mills['s] direct orders to not schedule her for AFB CAO training." ECF No. 72-11, Flynn Decl. at 9. To account for Flynn's declaration, the Magistrate Judge explained that even if Mills had instructed Flynn in this manner, neither Mills nor Flynn were responsible for assigning Hillman CAO training. Based solely on Hillman's objections, the court agrees with Hillman that a juror might reasonably conclude, from Flynn's statement above, that Mills possessed some authority to schedule training.

Critically, however, Flynn later stated in the same declaration that "[a]t that time there was nothing I could do about the training issue. A new director was getting ready to take over, therefore Mr. Ortiz would not be there to follow through with her training." Id. at 10. Viewed in the light most favorable to Hillman, Mills may have had some authority or perhaps exclusive authority for a brief time during the transition from Ortiz to his successor; however, the evidence in the record—including Flynn's declaration— indicates that the store director had the ultimate decision-making authority with regard to CAO training. By her own admission, Hillman continued to seek CAO training throughout the course of her employment. Hillman does not argue that the subsequent store directors knew of her protected activity, and the fact that they still did not schedule her for CAO training belies her suggestion of retaliatory animus. See Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an

employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.").  In other words, a reasonable juror could not conclude that Mills retaliated against Hillman without impermissibly speculating that while Ortiz had the ultimate authority to schedule training, the subsequent directors somehow did not.  For those reasons, the court adopts the Magistrate Judge's recommendation and finds that the denial of CAO training was not a retaliatory act as a matter of law.

Next, the Magistrate Judge rejected the contention that Mills retaliated against Hillman by denying her requests to be scheduled for more hours.  The Magistrate Judge explained that Mills had previously denied such requests from Hillman as early as 2011—approximately three years prior to her protected activity.  According to Hillman, the R&R ignored that three days after she informed Mills of her plans to file an EEO complaint, Mills directed Flynn to schedule Hillman for no more than forty-eight hours in a pay period.  That may constitute some evidence of temporal proximity and causation, but even if the court treated it as such, the prior denials of additional working hours support the Secretary's argument that DeCA has legitimate, non-retaliatory reasons for its actions.  Relatedly, Hillman admits that she later declined opportunities in 2018 to apply for a thirty-two or forty-hour position:

> A:    He actually stated there was going to be a couple -- a 32-hour and a 40-hour position coming up in the near future, so he just said hold tight.
>
> Q:    And did those positions come up?
>
> A:    They did.
>
> Q:    And did you apply for those?

A:      I did not.

Hillman Dep. at 53:12–19.[4]  The court finds that these facts together undermine

Hillman's ability to show a retaliatory animus, and at minimum, illustrate that DeCA's

reasons for not scheduling her additional hours were legitimate and not pretextual.

 Finally, the Magistrate Judge found that the alleged decision to reassign Hillman

to the ID desk was not causally connected to her protected activities.  The Magistrate

Judge first determined that Mills was not the decisionmaker who reassigned Hillman to

work at the ID desk.  In her objections, Hillman argues that the Magistrate Judge

overlooked the declaration of Robert Richardson, wherein Richardson stated that Mills

was responsible for the reassignment.  See ECF No. 72-15, Richardson Decl. at 3.  But

the Magistrate Judge expressly addressed the declaration, noting that "[w]hile Mr.

Richardson does respond that 'Ms. Mills' assigned [Hillman] to the ID desk, his

remaining statements contradict this assertion.'"  R&R at 24.  As such, Hillman's

objections once again express mere disagreement with the Magistrate Judge's

recommendation, rather than point to a specific error committed.

 In any event, the court is persuaded that even if Mills had been responsible for

Hillman's reassignment, Hillman failed to present any other evidence of a causal

connection.  As stated in the R&R, "temporal proximity is insufficient to establish

causation" when the reassignment occurred more than eighteen months after Hillman last

engaged in a protected activity by filing her EEO complaint in February 2015.  R&R at

---

[4] Hillman argues that the Magistrate Judge misread the deposition transcript upon which Hillman's admission was based.  ECF No. 79 at 13 (citing Hillman Dep. 96:10–16).  The court is willing to find that the portion cited by Hillman is ambiguous at best, but the court finds that the portion cited by the Secretary—reproduced here—leaves little ambiguity on this issue.

24–25 (collecting cases).  In response to this point, Hillman notes that Mills was

transferred to Japan in March 2015 and returned to Charleston in September 2016.  She

argues that her reassignment therefore occurred less than a month after Mills returned to

the Charleston commissary.  Hillman provides no legal authority that suggests the court

may evaluate temporal proximity by omitting time that an employer was not a supervisor,

but even if the court were to engage in that exercise, the fact remains that Mills did not

reassign Hillman prior to her departure either.  Critically, Hillman alleges that Mills was

the decisionmaker who knew about her protected activity from the onset of it.  Mills's

belated decision to reassign her therefore negates any reasonable inference that it was a

result of her protected activity.  Dowe, 145 F.3d at 657 (determining that a lengthy period

of time between the employer becoming aware of the protected activity and the alleged

adverse employment action negated any inference that a causal connection existed).  For

those reasons, the court overrules Hillman's objections and grants summary judgment in

the Secretary's favor on Hillman's Title VII retaliation claim.

### C.  Hostile Workplace Environment

The amended complaint alleges that the same actions by Mills also created a

hostile workplace environment for Hillman.  The Magistrate Judge concluded that

Hillman's allegations were either not attributable to Mills or were not sufficiently severe

to sustain her hostile work environment claims.  In her objections, Hillman chooses to

"incorporate and restate" her arguments as stated in her response to the motion for

summary judgment and in support of her discrimination and retaliation claims.  The court

has addressed those objections in the respective sections of this order.  In the absence of

any other specific objections raised by Hillman, the court reviews the Magistrate Judge's

recommendation for clear error.  Finding none, the court grants summary judgment in the Secretary's favor on Hillman's hostile work environment claim.

### D.  Constructive Discharge

Finally, the Magistrate Judge considered Hillman's claim that she was ultimately forced to resign and that her resignation constituted a constructive discharge.  Although constructive discharge may also serve as a potential adverse employment action for a prima facie discrimination claim, see Dixon v. Boone Hall Farms, Inc., 2019 WL 6130472, at *3 (D.S.C. Nov. 19, 2019), Hillman clarified in her briefs that her constructive discharge claim is based on "reprisal," not racial discrimination, ECF No. 72 at 19.  As such, the court evaluates it as a free-standing claim.

The Magistrate Judge recommended that the court grant summary judgment in the Secretary's favor, reasoning that Hillman's allegations underlying her constructive discharge claim are the same as those for her hostile work environment claim.  "The standard for constructive discharge is . . . stricter, in fact, than the one required to establish a hostile work environment."  Bouknight v. S.C. Dep't of Corr., 487 F. Supp. 3d 449, 477 (D.S.C. 2020).  Since the Magistrate Judge found that Hillman's allegations could not sustain her hostile work environment claims, the Magistrate Judge recommended the same disposition for Hillman's constructive discharge claim.

In her objections, Hillman once again relies on her prior arguments, although Hillman additionally draws the court's attention to a memorandum prepared by Hillman's store director at the time of her resignation, Robert Coulter ("Coulter"), to Hillman's other managers.  ECF No. 79 at 15 (citing ECF No. 69-9).  In that memorandum, Coulter asked the other managers to affirm that they had never heard Coulter discuss Hillman's

EEO complaints in staff meetings or training sessions, despite Hillman's suggestion to the contrary. Id. Hillman argues that this memorandum evinces an intent "to convey Mr. Coulter's animosity to both me[] and the EEO process by telling his subordinates essentially, 'you are either with me or against me on this.'" ECF No. 79 at 16. The court does not read the same insidious intent into the memorandum. Coulter did not suggest that the managers were expected to concur, and it would require an unwarranted inference on the part of a reasonable juror to reach a conclusion that he did so impliedly. In the absence of any other direct objection that has not already been addressed, the court adopts the R&R and grants summary judgment in the Secretary's favor on Hillman's constructive discharge claim.

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R and **GRANTS** the motion.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 27, 2022**
**Charleston, South Carolina**